# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# DALLAS DIVISION

| | | |
|---|---|---|
| GIOVANNI HERNANDEZ, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:23-CV-01583-E |
| | § | |
| DALLAS COUNTY SHERIFF, MARIAN | § | |
| BROWN, *in her official capacity*, DALLAS | § | |
| COUNTY, Texas AND Does 1 Through 100, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Dallas County's Motion to Dismiss, which seeks to dismiss all claims asserted against Dallas in Plaintiff Hernandez's Second Amended Complaint. (ECF No. 16). Having carefully considered the Motion to Dismiss; the Parties' briefing; and the applicable law—for reasons that follow—the Court grants the Motion to Dismiss. The Court further denies Hernandez's embedded motion for leave to amend his complaint.

## I.    BACKGROUND

### A.  The Parties

This dispute involves alleged deprivations of constitutional rights and civil rights under 42 U.S.C. 1983, the Fourth Amendment, and the Fourteenth Amendment. (ECF No. 13). Hernandez was formerly incarcerated at Dallas County Jail—sometimes referred to as Lew Sterrett Jail. (ECF No. 13 at 4-5). As pleaded, "Dallas County is a municipal corporation organized under the laws of the State of Texas," which "controls and operates the Jail, through Sheriff Brown." (ECF No. 13 at 2). Hernandez's pleadings fail to clearly identify the "fictitious" John Does, but Hernandez

appears to refer to jailers at the Jail as the John Does. (ECF No. 13). In briefing this Motion,

Hernandez refers to the Defendant Does 1 through 100 as "Lew Sterrett Jailers." (ECF no. 20).

**B. Hernandez's Allegations of Harm**

Hernandez was incarcerated at the Jail in July 2021. (ECF No. 13 at 7).[1] Hernandez alleges

he "was a vibrant, healthy young man" prior to his incarceration. (ECF No. 13 at 5). Hernandez

alleges:

> Beginning on the day that Plaintiff Hernandez was incarcerated at the Dallas County Defendant's Lew Sterrett jail . . . Plaintiff Hernandez's mother Maria Hernandez gave notice by telephone communication, in-person oral communication and by written communication to Plaintiff Hernandez's jailers at the Dallas County's Lew Sterrett jail that her son was at a heightened risk for having a severe stroke unless they took preventive steps to mitigate those risks.
>
> On or about July 23, 2021, Plaintiff Hernandez's physician provided The Dallas County Defendants and specifically Plaintiff Hernandez's Jailers at the Dallas County's Lew Sterrett jail with written and verbal warnings that Plaintiff Hernandez was at an elevated risk of having a stroke and gave them specific instructions to prevent Plaintiff Hernandez from having a severe stroke.
> [. . . .]
> [I]n July 2021, Plaintiff Hernandez had a mild stroke and began to exhibit cognitive issues consistent with having a mild stroke.
> [. . . .]
> On or about July 28, 2021, [. . .] the Dallas County Defendants summoned a psychiatrist to verify that Plaintiff Hernandez was competent to stand for trial.
> [. . .] [T]he examining psychiatrist documented that Plaintiff Hernandez was having severe cognitive issues, was not competent to stand trial and recommended in-patient treatment[.]
>
> [O]n . . . July 29, 2021, [Hernandez] suffered a major stroke.
>
> On . . . July 30, 2021, [Hernandez] suffered a second, much more severe stroke.
>
> [. . .] Defendants . . . sent [Hernandez] to the hospital.
>
> Once at the hospital, it was determined that [Hernandez] had suffered severe brain damage that left him in a coma state.

---

[1] Hernandez provides no specific dates as to the beginning of his incarceration. (*See* ECF No. 13).

(ECF No. 13 at 4-10).[2]

### C. Procedural History

Hernandez initiated this litigation on July 14, 2023. (ECF No. 1). As amended, Hernandez alleges three causes of action against Dallas: (i) "deliberate indifference violation of the Fourteenth Amendment pursuant to 42 U.S.C. 1983;" (ii) "unconstitutional conditions of confinement in violation of the Fourteenth Amendment;" and (iii) "failure to train in violation of the Fourth Amendment." (ECF No. 13 at 11-29). The Parties have dismissed claims against Sheriff Brown without prejudice by stipulation. (ECF Nos. 11; 17). Hernandez's claims against Dallas and the John Does remain. (ECF No. 17).

On November 15, 2023, Dallas filed its motion to dismiss the claims Hernandez asserted against it. (ECF No. 16). Hernandez has responded and embedded a motion for leave to amend his complaint for a third time. (ECF No. 20). Dallas has replied. (ECF No. 21). Having been fully briefed, the Court enters its determinations hereunder.

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 8(a) requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). If a plaintiff fails to satisfy Rule 8(a), the defendant may file a motion to dismiss the plaintiff's claims under Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim upon which relief may be granted." Fed. R. Civ. P. 12(b)(6).

To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim

---

[2] Hernandez does not define "Dallas County Defendants" in his Second Amended Complaint.

has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 678. In reviewing a motion to dismiss under Rule 12(b)(6), the court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to plaintiff. *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 735 (5th Cir. 2019). The Court will not accept as true "legal conclusions couched as factual allegations." *Iqbal*, 556 U.S. at 678. "The court's review is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) (citing *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000)).

### III.   SECTION 1983 CLAIMS, GENERALLY

Hernandez's claims are based on 42 U.S.C. § 1983, which permits civil action for deprivation of rights. 42 U.S.C. § 1983. To state a claim under § 1983, a plaintiff must allege: (i) "some person has deprived him of a federal right" guaranteed by the United States Constitution or federal law; and (ii) "the person who deprived him of that right acted under color of state or territorial law." *Gomez v. Toledo*, 446 U.S. 635, 640 (1980). The existence of a constitutional violation is a "threshold" requirement in any § 1983 claim. *Peterson v. City of Fort Worth*, 588 F.3d 838, 844 (5th Cir. 2009). "[W]ithout an underlying *constitutional* violation, there can be no § 1983 liability[.]" *Becerra v. Asher*, 105 F.3d 1042, 1047 (5th Cir. 1997) (emphasis in original). Hernandez asserts Dallas violated his rights under the Fourteenth Amendment and Fourth Amendment during his incarceration. (ECF No. 13).

### IV.   HERNANDEZ'S FOURTEENTH AMENDMENT CLAIMS

"To state a Fourteenth Amendment due process claim under § 1983, 'a plaintiff must first identify a protected life, liberty or property interest and then prove that governmental action resulted in a deprivation of that interest.'" *Gentilello v. Rege*, 627 F.3d 540, 544 (5th Cir. 2010) (quoting *Baldwin v. Daniels*, 250 F.3d 943, 946 (5th Cir. 2001)). A claim under the Fourteenth Amendment may proceed under substantive due process or procedural due process. *See generally Steward v. City of New Orleans*, 537 F. App'x 552, 556 (5th Cir. 2013). Here, Hernandez does not distinguish whether his Fourteenth Amendment claim(s) are asserted under substantive due process or procedural due process. (*See* ECF Nos. 13; 20). However, it is evident from Hernandez's pleadings and briefing that he has asserted only a substantive due process challenge. (*See* ECF Nos. 13; 20). "This substantive component of the Due Process Clause protects individual liberty against certain government actions regardless of the fairness of the procedures used to implement them." *Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443, 450 (5th Cir. 1994) (internal quotations omitted).

#### A.  Hernandez's Protected Life, Liberty, or Property Interest

Hernandez's Second Amended Complaint does not (i) expressly identify his protected life, liberty, or property interest or (ii) include allegations that relate to whether he was jailed as a pretrial detainee or after a conviction and sentencing. (*See* ECF No. 13).[3] However, Hernandez avers "[u]nder the Fourteenth Amendment, corrections officials are required to provide for the reasonable health and safety of persons in pretrial custody." (ECF No. 13 at 25) (citing *Youngberg v. Romeo*, 457 U.S. 307, 315-16, 324 (1982). Dallas offers no challenge to Hernandez's assertion

---

[3] Hernandez provides no cause number or other identifying information that relates to his confinement. (*See* ECF No. 13). Hernandez asserts no claims under the Eighth Amendment. *See* U.S. Const. amend. VIII (*inter alia*, prohibiting cruel and unusual punishments).

of some protected life, liberty, or property interest—similarly asserting Hernandez was a pretrial detainee at the Jail. (*See* ECF Nos. 16; 21). In the context of a Fourteenth Amendment due process challenge relating to medical care in the Jail, the Court has previously explained a pretrial detainees' rights as follows:

> Pretrial detainees' rights exist under the Due Process Clause of the Fourteenth Amendment but are subject to the same scrutiny as if they had been brought as a deliberate indifference claim under the Eighth Amendment. *See Cleveland v. Bell*, 938 F.3d 672, 676 (5th Cir. 2019) (citing *Hare v. City of Corinth*, 74 F.3d 633, 648–49 (5th Cir. 1996) (en banc)).
>
> **The Eighth Amendment imposes duties on prison officials, who must provide humane conditions of confinement.** *Farmer v. Brennan*, **511 U.S. 825, 832 (1994). Prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must take reasonable measures to guarantee the safety of the inmates.** *Id.* Prison officials who act reasonably cannot be found liable under the Eighth Amendment. *Id.* at 845.

*Sanchez v. Brown*, No. 3:20-CV-00832-E, 2020 WL 2615931, at *14 (N.D. Tex. May 22, 2020) (emphasis added in bold).

Here, it is undisputed that Hernandez had some protected life or liberty interest as it related to his health, safety, or medical care, as a pretrial detainee. *See Farmer v. Brennan*, 511 U.S. 825, 832 (1994). The Court assumes without deciding that Hernandez has identified a protected life or liberty interest in the Fourteenth Amendment due process context. *See generally Thompson v. Upshur Cnty., TX*, 245 F.3d 447, 457 (5th Cir. 2001) ("[p]retrial detainees have a constitutional right, under the Due Process Clause of the Fourteenth Amendment, not to have their serious medical needs met with deliberate indifference on the part of the confining officials."). The Court next addresses whether "governmental action" resulted in a deprivation of that interest. *See Rege*, 627 F.3d at 544.

**B. Dallas and Municipal Liability**

"Municipal liability under 42 U.S.C. § 1983 requires proof of 1) a policymaker; 2) an official policy; 3) and a violation of constitutional rights whose "moving force" is the policy or custom." *Rivera v. Houston Indep. Sch. Dist.*, 349 F.3d 244, 247 (5th Cir. 2003) (citing *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001)); *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978)). As the Fifth Circuit has stated:

> The policymaker must have final policymaking authority. *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127, 108 S.Ct. 915, 926, 99 L.Ed.2d 107 (1988). Municipal liability cannot be sustained under a theory of *respondeat superior. Bd. of County Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 403, 117 S.Ct. 1382, 1388, 137 L.Ed.2d 626 (1997); *Piotrowski*, 237 F.3d at 578. "[T]he unconstitutional conduct must be directly attributable to the municipality through some sort of official action or imprimatur; isolated unconstitutional actions by municipal employees will almost never trigger liability." *Piotrowski*, 237 F.3d at 578. **Therefore to sustain liability under § 1983, the [Plaintiff] must point to more than the actions of a [municipal] employee, [Plaintiff] must identify a policymaker with final policymaking authority and a policy that is the "moving force" behind the alleged constitutional violation.**

*Rivera*, 349 F.3d at 247 (emphasis added in bold). The Supreme Court has explained that a governmental entity—such as Dallas—may not be held liable under § 1983 "unless action pursuant to official municipal policy of some nature *caused* a constitutional tort." *Monell*, 436 U.S. at 691, 98 S.Ct. 2018 (emphasis added). In discussing *Monell* the Supreme Court has further explained:

> [A] plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a *direct causal link between the municipal action and the deprivation of federal rights.* Pp. 1387–1388.

*Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. at 397, 404 (1997) (emphasis added). The Court next discusses Dallas's (i) policymaker; (ii) alleged policies; (iii) acclaimed deliberate indifference; (iv) failure-to-train or failure-to-supervise; and (v) conditions of confinement.

i. *Dallas's Policymaker*

Hernandez asserts three policymakers that relate to his claims of harm while incarcerated at the Jail: (i) Sheriff Marian Brown; (ii) Dallas County Commissioner's Court; and (iii) Dallas County Judge Clay Jenkins. (ECF No. 13 at 11). Dallas argues that, as a matter of law, only Sheriff Brown is the pertinent policymaker with final policymaking authority over the Jail. (ECF No. 16 at 20-21). In response, Hernandez appears to concede Sheriff Brown is Dallas's "chief policy maker [sic]." (ECF No. 20 at 10, 15-17).

"[W]hether a particular official has final policymaking authority is a question of state law." *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989) (internal quotations omitted). The Texas Local Government Code provides:

> (a) The **sheriff** of each county is the keeper of the county jail. The sheriff shall safely keep all prisoners committed to the jail by a lawful authority, subject to an order of the proper court.
>
> (b) The **sheriff** may appoint a jailer to operate the jail and meet the needs of the prisoners, but the sheriff shall continue to exercise supervision and control over the jail.

Tex. Loc. Gov't Code Ann. § 351.041 (emphasis added in bold). The Fifth Circuit has explained that

> It has long been recognized that, in Texas, the county sheriff is the county's final policymaker in the area of law enforcement, not by virtue of delegation by the county's governing body but, rather, by virtue of the office to which the sheriff has been elected[.]

*Turner v. Upton Cnty., Tex.*, 915 F.2d 133, 136 (5th Cir. 1990).[4]

---

[4] In *Familias Unidas v. Briscoe*, the Fifth Circuit specified that:

> Because of the unique structure of county government in Texas ... elected county officials, such as the sheriff ... hold[ ] virtually absolute sway over the particular tasks or areas of responsibility entrusted to him by state statute and is accountable to no one other than the voters for his conduct therein.... Thus, at least in those areas in which he, alone, is the final authority or ultimate repository of county power, his official conduct and decisions must necessarily be considered those of one

Here, all of Hernandez's claims pertain only to the circumstances of his treatment while incarcerated at the Jail—over which Sheriff Brown is the sole "keeper" and "final policymaker." *See* Tex. Loc. Gov't Code § 351.041; *Turner*, 915 F.2d at 136. Although Hernandez's pleadings refer generally to Dallas; Dallas County's Commissioner's Court; and Judge Jenkins—no pleaded allegation nor law supports a determination that Dallas County's Commissioner's Court or Judge Jenkins were "final policymakers" as to the challenged conduct. (*See generally* ECF No. 13).[5] Thus, the Court determines Sheriff Brown is the final policymaker in this case.

ii.    *Official Policy*

The official policy requirement for municipal liability can be shown by

1. A policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority; or

2. A persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy. Actual or constructive knowledge of such custom must be attributable to the governing body of the municipality or to an official to whom that body had delegated policy-making authority. Actions of officers or employees of a municipality do not render the municipality liable under § 1983 unless they execute official policy as above defined.

*Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984), *on reh'g*, 739 F.2d 993 (5th Cir. 1984) (en banc) (per curiam). To state a claim for municipal policy liability under § 1983, a

---

"whose edicts or acts may fairly be said to represent official policy" for which the county may be held responsible under section 1983.

619 F.2d 391, 404 (5th Cir.1980) (quoting *Monell,* 436 U.S. at 694, 98 S.Ct. at 2037, citations omitted); *see Bennett v. City of Slidell,* 728 F.2d 762, 796 (5th Cir.1984) (en banc), *cert. denied,* 472 U.S. 1016, 105 S.Ct. 3476, 87 L.Ed.2d 612 (1985).

[5] Hernandez argues, without factual allegation or legal citation, that the Dallas County Commissioner's Court delegated policymaking authority over the Jail to Sheriff Brown. (ECF No. 20 at 16-17). However, under Texas Local Government Code § 351.041, Texas empowers the sheriff of each county as the "keeper" of the county jail with "lawful authority." Tex. Loc. Gov't Code Ann. § 351.041(a). Hernandez directs the Court to no allegation or law that shows a municipality's commissioner's court—like the Dallas County Commissioner's Court—has any corresponding power to delegate such authority, and the Court has found none. The Court rejects Hernandez's corresponding argument.

plaintiff must plead sufficient facts that—if true—establish that the "challenged policy was promulgated or ratified by the city's policymaker." *Groden v. City of Dallas*, 826 F.3d 280, 285 (5th Cir. 2016). To survive a motion to dismiss, a complaint's "description of a policy or custom and its relationship to the underlying constitutional violation . . . cannot be conclusory; it must contain specific facts." *Spiller v. City of Texas City, Police Dep't.*, 130 F.3d 162, 167 (5th Cir. 1997) (citations omitted). An action asserting municipal policy liability under § 1983 cannot "proceed past the pleadings stage" if the complaint does not meet the requirements set forth in *Spiller. Peña v. City of Rio Grande City*, 879 F.3d 613, 622 (5th Cir. 2018) (citing *Spiller*, 130 F.3d at 167).

Here, Hernandez does not allege a facially unconstitutional policy; Hernandez does not plead that Sheriff Brown promulgated a facially unconstitutional policy. (ECF No. 13); *see Webster*, 735 F.2d at 841. Instead, Hernandez seeks to obtain municipal liability by alleging persistent, widespread practice(s) of his jailers, which violated his constitutional rights. (ECF No. 13); (*see* ECF No. 16 at 19-21) (enumerating various practices relating to jailers at the Jail). Plausibly pleading "a practice 'so persistent and widespread as to practically have the force of law'" requires plaintiffs to "do more than describe the incident that gave rise to [their] injur[ies]." *Peña*, 879 F.3d at 622 (quoting *Connick v. Thompson*, 563 U.S. 51, 61 (2011)). As the Fifth Circuit explained in *Webster*:

> If actions of city employees are to be used to prove a custom for which the municipality is liable, those actions must have occurred for so long or so frequently that the course of conduct warrants the attribution to the governing body of knowledge that the objectionable conduct is the expected, accepted practice of city employees.

*Webster*, 735 F.2d at 842.[6]

---

[6] *See also Davidson v. City of Stafford*, 848 F.3d 384, 396 (5th Cir. 2017), *as revised* (Mar. 31, 2017) (discussing the same).

As to the challenged widespread practice(s), Hernandez's Second Amended Complaint states:

> **(a)** That jailers at the Dallas County Defendants' Lew Sterrett jail do not send prisoners or detainees to a hospital when they exhibit cognitive difficulties that are consistent with that prisoner or detainee having a stroke or other serious medical emergency;[]
>
> **(b)** That jailers at the Dallas County Defendants' Lew Sterrett jail do not examine or assist a prisoner or detainee, such as Plaintiff Hernandez, who has suffered a stroke or other serious medical emergency, by either calling for medical care to examine or assist that prisoner or detainee and/or sending that prisoner or detainee to the hospital;[]
>
> **(c)** That jailers at the Dallas County Defendants' Lew Sterrett jail do not follow a prisoner or detainee's outside physician's instructions and/or directives for the prisoner or detainee at issue;[]
>
> **(d)** That jailers at the Dallas County Defendants' Lew Sterrett jail are not trained by the Dallas County Defendants to recognize and/or determine if a prisoner or detainee has had a mild stroke and is at risk for a subsequent severe stroke.

(ECF No. 13 at 15-16) (emphasis in original). Taken together, Hernandez alleges Dallas has four policies—widespread practice(s) so common and well settled as to constitute a custom—that result in a denial of pretrial detainees with adequate medical treatment. (ECF No. 13 at 15-16).[7] Hernandez pleads these policies caused him harm in July 2021. (ECF No. 13 at 16-19). As to Hernandez's own claims of harm resulting from the alleged policies, alleging facts describing the singular detention and treatment of Hernandez does not identify a "persistent, widespread practice" that is "so common and well settled as to constitute a custom that fairly represents municipal policy." *Piotrowski*, 237 F.3d at 579 (citations omitted). Nevertheless, Hernandez further pleads five instances of "related unconstitutional conduct:"

---

[7] Pleadings asserting municipal policy liability under § 1983 for the violation of a pretrial detainees right to medical care are sufficient "when they make specific factual allegations that allow a court to reasonably infer that a policy or practice exists and that the alleged policy or practice was the moving force behind municipal employees' deliberate indifference to an inmate's serious medical needs." *Balle v. Nueces County*, 962 F.3d 552, 559 (5th Cir. 2017) (citation omitted).

A federal jury in the U.S. District Court for the Northern District of Texas found the Dallas County Defendants liable for their medical neglect that caused former inmate Stanley Shepherd to suffer a severe stroke while in custody at the Dallas County Defendants' Lew Sterrett jail in 2004.

. . . .

The Dallas County Defendants settled a wrongful death lawsuit brought by the family of Rosie Sims who was mentally ill and died in the Dallas County Defendants' Lew Sterrett jail in 2005. [. . .] Ms. Sims died of pneumonia after her jailers at the Dallas County Lew Sterrett jail followed the Dallas County Defendants' policy and/or custom of not sending a prisoner or detainee to a hospital when they exhibit cognitive difficulties that are consistent with that prisoner or detainee having a stroke or other serious medical emergency and not examining or assisting a prisoner or detainee, who has suffered a stroke or other serious medical emergency, by either calling for medical care to examine or assist that prisoner or detainee and/or sending that prisoner or detainee to the hospital.

. . . .

The Dallas County Defendants settled a lawsuit brought by former inmate Bruce McDonald who lost his vision [in 2005] because his jailers at the Dallas County Lew Sterrett jail followed the Dallas County Defendants' policy and/or custom[.][8]

. . . .

Mr. Duvall was incarcerated at the Dallas County Defendant's Lew Sterrett jail on December 11, 2003. For a full week after his arrival, he was bedridden with a high fever, sweats, nausea and swelling in his feet and legs. His jailers at the Dallas County Defendants' Lew Sterrett jail ignored his repeated pleas for medical attention. By the time Mr. Duvall was released on December 26, 2003, he was still experiencing a high fever, uncontrolled vomiting, and blindness in one eye. He had completely lost the use of one of his legs and both his feet and legs were grossly swollen. Mr. Duvall was diagnosed with "MRSA" and as a result suffered a total loss of vision. Duvall filed a 42 U.S.C. § 1983 civil rights claim in this court alleging his constitutional rights had been violated under the 14th Amendment.

. . . .

The Dallas County Defendants settled a lawsuit brought by former inmate Revis Ray Loftis who suffered a severe stroke while jailed at the Dallas County Defendants' Lew Sterrett jail in 2007. [. . .] Mr. Loftis' jailers at the Dallas County Lew Sterrett jail ignored his disclosure that he was at high risk of having a stroke (and had in fact had 2 strokes in the past) and failed to provide him with the medication that his physicians had provided to prevent him from having a severe stroke. As a result, Mr. Loftis had a severe stroke that left him paralyzed.

---

[8] Though Hernandez provides no date as to this third instance, the Northern District of Texas's records reveal this case as Mcdonald v. Dallas County, 3:06-CV-0771-L. Honorable Federal District Judge Sam Lindsay described the challenged conduct or policies in *Mcdonald* as occurring in 2005. *McDonald v. Dallas Cnty.*, No. CIV.A. 3:06-CV-0771-L, 2008 WL 918286, at *1 (N.D. Tex. Mar. 31, 2008) ("McDonald was struck in his left eye by another inmate, and he informed the officer on duty but he did not receive any medical attention at that time.").

(ECF No. 13 at 19-25) (footnote added). "A pattern requires similarity, specificity, and sufficiently numerous prior incidents." *Davidson v. City of Stafford, Tex.*, 848 F.3d 384, 396 (5th Cir. 2017), *as revised* (Mar. 31, 2017) (internal citation omitted).[9] The Fifth Circuit has explained:

> '[p]rior indications cannot simply be for any and all "bad" or unwise acts, but rather must point to the specific violation in question.' "[] "While the specificity required should not be exaggerated, our cases require that the prior acts be fairly similar to what ultimately transpired[.]

*Hicks-Fields v. Harris Cnty., Tex.*, 860 F.3d 803, 810 (5th Cir. 2017) (footnotes omitted). Although Hernandez invites the Court to expand review of "persistent, widespread practice(s)" relating to jailer medical care for strokes to include corresponding medical care involving illness from pneumonia; losing vision; and "MRSA," the Court must decline as those latter injuries are not "fairly similar" to what ultimately transpired in this case—several alleged strokes. *See Hicks-Fields, Tex.*, 860 F.3d at 810.

Furthermore, the Fifth Circuit has repeatedly required more than five "sufficiently numerous prior incidents." *See Davidson*, 848 F.3d at 396 (three arrests over three and a half years to form the basis of the alleged pattern of unconstitutional violations was "insufficient" to establish a pattern of constitutional violations); *Peterson*, 588 F.3d at 852 ("[T]he 27 [complaints of excessive force from 2002 to 2005], in the context of this record, do not suggest a pattern "so common and well-settled as to constitute a custom that fairly represents municipal policy."); *Pineda v. City of Houston*, 291 F.3d 325, 329 (5th Cir. 2002) ("Eleven incidents each ultimately offering equivocal evidence of compliance with the Fourth Amendment cannot support a pattern of illegality in one of the Nation's largest cities and police forces."). Notwithstanding, Courts in this circuit have routinely dismissed claims of municipal policy liability under § 1983 based on

---

[9] Furthermore, the Fifth Circuit has explained that "notice of a pattern of similar violations is required." *Estate of Davis ex rel. McCully v. City of N. Richland Hills*, 406 F.3d 375, 383 (5th Cir. 2005).

the failure to identify a pattern of unconstitutional behavior similar to the incident giving rise to the claim. *See, e.g., Peña*, 879 F.3d at 623 (affirming dismissal of pleadings that failed to identify a pattern of tasing non-suspect minors); *Self v. City of Mansfield, Tex.*, 369 F. Supp. 3d 684, 702-03 (N.D. Tex. 2019) (dismissing complaint that, *inter alia*, failed to plausibly allege a "pattern of repeated constitutional violations" or "persistent, repeated, and constant violations rights by virtue of [an] alleged failure to train"); *Harvey v. Montgomery County*, 881 F.Supp.2d 785, 798 (S.D. Tex. 2012) (dismissing First Amendment claims for failure to allege a pattern of similar violations); *Monacelli v. City of Dallas*, No. 3:21-cv-2640-L, 2022 WL 4668054, *6-8 (N.D. Tex. Sep. 30, 2022) (dismissing complaint after finding, *inter alia*, no alleged pattern of police officers "using excessive force against non-threatening, peaceful protestors and journalists covering protests as a means of intimidation and control" aside from two incidents, separated by two years); *Pinedo v. City of Dallas*, No. 3:14-cv-958-D, 2015 WL 5021393, at *5 ("To establish a custom, a plaintiff must demonstrate (and, at the pleading stage, must plausibly plead) 'a pattern of abuses that transcends the error made in a single case.' ") (quoting *Piotrowski*, 237 F.3d at 582).

No factual allegation asserts Sheriff Brown knew of or ratified the challenged, alleged custom(s) or practice(s). (ECF No. 13).[10] The Court concludes that Hernandez does not plausibly allege a custom or practice of constitutional violations because he fails to plead—with specificity—factual allegations that the challenged actions have occurred for so long or so frequently that the course of conduct warrants the attribution to Sheriff Brown (or, *arguendo*, Dallas) that the objectionable conduct is the expected, accepted practice of city employees. *Webster*, 735 F.2d at 842; *see Davidson*, 848 F.3d at 396. The Court concludes that Hernandez has

---

[10] Hernandez's complaint repeatedly asserts—in conclusory fashion—that the challenged custom(s) or practice(s) "emanated" from Sheriff Brown. (ECF No. 13). Hernandez's response asserts the same. (ECF No. 20). Hernandez offers no explanation as to these repeated statements.

failed to plausibly allege facts from which the Court can infer a policy, custom, or practice of failing to provide pretrial detainees with adequate medical treatment.[11] Hernandez has failed to show a direct causal link between municipal action and the deprivation of federal rights. *Brown*, 520 U.S. at 397, 404 (1997). Thus, the Court GRANTS Dallas's motion to dismiss to the extent that it is based on an official policy.

### iii.    *Deliberate Indifference*

The third element of a claim for municipal liability requires that Hernandez adequately plead that the municipal policy or custom was the "moving force" of the constitutional deprivation, which requires a "high threshold of proof." *Piotrowski*, 237 F.3d at 580 (citing *Monell*, 436 U.S. at 694, 98 S.Ct. 2018). Here, Hernandez must plausibly plead "that a municipal decision reflects deliberate indifference to the risk that a violation of a particular constitutional or statutory right will follow the decision." *Valle v. City of Houston*, 613 F.3d 536, 542 (5th Cir. 2010) (quoting *Brown*, 520 U.S. at 411); *see also Piotrowski*, 237 F.3d at 579 ("[E]ven a facially innocuous policy will support liability if it was promulgated with deliberate indifference to the 'known or obvious consequences' that constitutional violations would result." (quoting *Brown*, 520 U.S. at 407)). "Deliberate indifference is a high standard—'a showing of simple or even heightened negligence will not suffice.'" *Valle*, 613 F.3d at 542 (quoting *Piotrowski*, 237 F.3d at 579). "To succeed on a deliberate-indifference claim, plaintiffs must show that (1) the official was "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," and (2) the official actually drew that inference." *Dyer v. Houston*, 964 F.3d 374, 380 (5th Cir. 2020) (citing *Domino v. Tex. Dep't of Criminal Justice*, 239 F.3d 752, 755 (5th Cir. 2001)) (internal quotation

---

[11] The Court notes that—as pleaded—Hernandez underwent a psychiatric evaluation on July 28, 2021, and went to the hospital some time after his stroke on July 30, 2021. (ECF No. 13 at 9-10).

omitted); *see, e.g.*, *Thompson*, 245 F.3d at 458 (discussing the same as to deliberate indifference in the context of an episodic failure to provide reasonable medical care to a pretrial detainee).[12]

Assuming *arguendo* Hernandez had pleaded facts to support unconstitutional custom(s) or practice(s) that would substantiate a claim for municipal liability, Hernandez next asserts (i) Sheriff Brown; (ii) the Dallas County Commissioner's Court; or (iii) Judge Jenkins acted with "deliberate indifference" with regard to Hernandez's health, safety, or medical care while incarcerated at the Jail. (ECF Nos. 13; 20). However, Hernandez's allegations on "deliberate indifference" are entirely conclusory—essentially repeating two legal elements from *Dyer* without further factual allegation. (ECF No. 13). Hernandez pleads no facts about any of these three state actors (a) having any awareness of facts which the inference could be drawn that a substantial risk of serious harm exists or (b) actually drawing that inference. In other words, no factual allegation asserts (i) Sheriff Brown; (ii) the Dallas County Commissioner's Court; or (iii) Judge Jenkins knew anything about Hernandez or his medical care while incarcerated at the Jail. (ECF No. 13). Furthermore, no factual allegation shows any of these three state actors knew of Hernandez's challenged, alleged policies. (ECF No. 13). The Court concludes Hernandez has not plead a plausible claim for municipal liability under 42 U.S.C. § 1983 as based on deliberate indifference.

---

[12] The Fifth Circuit has explained a third element of a deliberate indifference claim—that the official "subjectively" intended harm to occur:

> We note that some of our cases have posited a third element—that the official "subjectively intended that harm occur." *See Garza v. City of Donna*, 922 F.3d 626, 635 & n.5 (5th Cir. 2019) (citing, *inter alia*, *Tamez v. Manthey*, 589 F.3d 764, 770 (5th Cir. 2009)). A panel of our court, however, recently wrote that it "cannot endorse [this] analysis" because it "depart[s] from controlling Supreme Court and Fifth Circuit law." *Garza*, 922 F.3d at 636 (collecting decisions).

*Thompson v. Upshur Cnty., TX*, 245 F.3d 447, 458 (5th Cir. 2001). The Court pretermits discussion of the "subjective" element as unnecessary.

Thus, the Court GRANTS Dallas's motion to dismiss to the extent that it is based on deliberate indifference.

    *iv.*       *Failure to Train or Failure to Supervise*

        Hernandez asserts failure-to-train and failure-to-supervise theories of liability under § 1983—based in the Fourteenth Amendment. (*See* ECF No. 13 at 27-29).[13] "A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick*, 563 U.S. at 61. "[T]here are limited circumstances in which an allegation of a 'failure to train' [or failure to supervise] can be the basis for liability under § 1983." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 378-79 (1989).[14] To succeed on a failure-to-train or failure-to-supervise claim, a plaintiff must be able to show: (1) the training procedures or supervision of employees was inadequate, (2) a causal link between such failure and the violation of plaintiff's constitutional rights, and (3) such failure amounts to deliberate indifference. *Goodman v. Harris Cnty.*, 571 F.3d 388, 395 (5th Cir. 2009) (citation omitted); *see, .e.g*, *Walker v. City of Dallas*, No. 3:23-CV-0391-D, 2024 WL 2734951, at *7 (N.D. Tex. May 28, 2024) (discussing the same). "'Deliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Connick*, 563 U.S. at 61 (brackets and citation omitted). "[W]hen [ ] policymakers are on actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights, the city may be deemed deliberately indifferent if the policymakers choose to retain that program." *Connick*, 563 U.S. at 61. "The failure to provide proper training may fairly be said to represent a

---

[13] As pleaded, Hernandez refers to the "Fourth Amendment" as the basis of this claim; however, Dallas avers this claim is properly based in the Fourteenth amendment. (*Compare* ECF No. 13 at 27-29 *with* ECF No. 16 at 30-31). Hernandez offers no response to this distinction. (ECF No. 20). The Court properly addresses Hernandez's failure to train or failure to supervise claim(s) as based on the Fourteenth Amendment.

[14] "Failure to train is a separate theory of municipal liability, but the same standard applies both to a failure to train claim and to a municipal liability claim." *Byers v. Navarro Cnty.*, 2012 WL 677203, at *16 (N.D. Tex. Mar. 1, 2012) (citations omitted); *see also Roberts v. City of Shreveport*, 397 F.3d 287, 293 (5th Cir. 2005).

policy for which the city is responsible, and for which the city may be held liable if it actually causes injury." *Brown v. Bryan Cnty.*, 219 F.3d 450, 457 (5th Cir. 2000) (brackets omitted) (quoting *City of Canton*, 489 U.S. at 390). "In resolving the issue of a city's liability, the focus must be on adequacy of the training program in relation to the tasks the particular officers must perform." *City of Canton*, 489 U.S. at 390. "[W]hen a municipal entity enacts a facially valid policy but fails to train its employees to implement it in a constitutional manner, that failure constitutes 'official policy' that can support municipal liability if it 'amounts to deliberate indifference.'" *Littell v. Hous. Indep. Sch. Dist.*, 894 F.3d 616, 624 (5th Cir. 2018) (quoting *City of Canton*, 489 U.S. at 388).

Dallas challenges Hernandez's failure to train and failure to supervise claim on the basis that Hernandez "fails to allege nonconclusory facts that permit an inference of policymaker deliberate indifference." (ECF No. 16 at 30). In response, Hernandez avers he generally incorporated paragraphs in his Second Amended Complaint and further specifically refers the Court to the following:

> With respect to the claims made the basis of this lawsuit, Defendant Dallas County failed to adequately train its officers on how to deal with individuals, specifically: **(a)** To train jailers at the Dallas County Defendants' Lew Sterrett jail to send prisoners or detainees to a hospital when they exhibit cognitive difficulties that are consistent with that prisoner or detainee having a stroke or other serious medical emergency; **(b)** To train jailers at the Dallas County Defendants' Lew Sterrett jail to examine or assist a prisoner or detainee, such as Plaintif Hernandez, who has suffered a stroke or other serious medical emergency, bto [sic] either call for medical care to examine or assist that prisoner or detainee and/or sending that prisoner or detainee to the hospital; **(c)** To train jailers at the Dallas County Defendants' Lew Sterrett jail to follow a prisoner or detainee's outside physician's instructions and/or directives for the prisoner or detainee at issue; **(d)** To train jailers at the Dallas County Defendants' Lew Sterrett jail to recognize and/or determine if a prisoner or detainee has had a mild stroke and is at risk for a subsequent severe stroke.

(ECF No. 13 at 28-29) (emphasis in original); (*see* ECF No. 20 at 26-27).

Here, Hernandez fails to assert any factual allegations regarding his failure to train and failure to supervise claim(s) that are not conclusory. Hernandez does not allege any specific inadequacy in the training of the jailers and the Jail. Similar to the Court's determinations hereabove, Hernandez does not plausibly plead that a failure to train or supervise the jailers was the moving force in causing Hernandez's constitutional injury; and Hernandez does not allege— other than in conclusory terms—that any policymaker acted with deliberate indifference to the allegedly inadequate training or supervision of the jailers. Consequently, the Court concludes Hernandez has not plead a plausible claim for municipal liability under 42 U.S.C. § 1983 as based on the failure to train or failure to supervise theories. Thus, the Court GRANTS Dallas's motion to dismiss to the extent that it is based on a failure to train or failure to supervise.

> v.     *Conditions of Confinement*

"A 'condition of confinement' case is a constitutional attack on 'general conditions, practices, rules, or restrictions of pretrial confinement.'" *Flores v. Cty. of Hardeman, Tex.*, 124 F.3d 736, 738 (5th Cir. 1997). When a plaintiff challenges conditions of confinement, "the proper inquiry is whether those conditions amount to punishment of the detainee." *Garza v. City of Donna*, 922 F.3d 626, 632 (5th Cir. 2019) (internal quotation omitted). Three elements must be established to prove an unconstitutional condition of confinement:

> (1) "a rule or restriction or ... the existence of an identifiable intended condition or practice ... [or] that the jail official's acts or omissions were sufficiently extended or pervasive"; (2) which was not reasonably related to a legitimate governmental objective; and (3) which caused the violation of [a detainee's] constitutional rights.

*Montano v. Orange Cnty., Tex.*, 842 F.3d 865, 874 (5th Cir. 2016) (quoting *Estate of Henson v. Wichita Cty., Tex.*, 795 F.3d 456, 468 (5th Cir. 2015) (internal citation omitted)).

The Fifth Circuit has addressed Fourteenth Amendment due process violations as based on conditions of confinement:

Because a state may not punish a pretrial detainee, conditions of confinement for such an inmate that amount to "punishment" violate the Constitution. ***In Bell v. Wolfish,[] the Supreme Court stated that "[i]f a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to punishment."[]*** We addressed this issue, *en banc,* in *Hare v. City of Corinth,[]* making clear that a plaintiff must show deliberate indifference on the part of the municipality only in a case in which the constitutional violation resulted from an episodic act or omission of a state actor.[] ***In cases like Duvall's, that are grounded in unconstitutional conditions of confinement, the plaintiff need only show that such a condition, which is alleged to be the cause of a constitutional violation, has no reasonable relationship to a legitimate governmental interest.*** In a conditions of confinement claim, "an avowed or presumed intent by the State or its jail officials exists in the form of the challenged condition, practice, rule, or restriction."[] As this court recognized while sitting *en banc,* "the reasonable-relationship test employed in conditions cases is functionally equivalent to the deliberate indifference standard employed in episodic cases."[]

*Duvall v. Dallas Cnty., Tex.*, 631 F.3d 203, 206–07 (5th Cir. 2011) (footnotes omitted, internal citations omitted) (emphasis added in bold italics). A plaintiff attempting to predicate municipal liability on a theory based on unconstitutional conditions of confinement must still meet the *Monell* burden:

> ***[T]his court has observed that "[u]nder Monell, a plaintiff must show either an official policy or persistent and widespread customs.*** Under [conditions of confinement], ... the plaintiff must show an intended condition or practice, or show that jail officials' acts are 'sufficiently extended or pervasive ... to prove an intended condition or practice.' ***We see no meaningful difference between these showings."*** *Duvall v. Dallas Cty., Tex.*, 631 F.3d 203, 208 (5th Cir. 2011) (quoting *Hare*, 74 F.3d at 645). ***Moreover, the standard of causation appears to be same: the policy or custom must have been "the moving force behind the violation."*** *Sanchez*, 956 F.3d at 791.

*Estate of Bonilla by & through Bonilla v. Orange Cnty., Tex.*, 982 F.3d 298, 308 (5th Cir. 2020) (addressing claim of unconstitutional condition of confinement) (emphasis added in bold italics).

As pleaded, Hernandez offers no factual allegations regarding a particular practice, rule, condition or restriction of his confinement. (ECF No. 13). Instead, Hernandez asserts—in conclusory fashion—the same allegations made against Dallas and the jailers in his claims for (i) municipal liability and (ii) failure to train or failure to supervise. (ECF No. 13 at 25-27).

Hernandez asserts no factual allegations or briefing that the Defendants' actions were not reasonably related to a legitimate governmental objective. *See Montano*, 842 F.3d at 874. As determined hereabove, no constitutional violation occurred. Assuming *arguendo* a constitutional violation had occurred—Hernandez asserts no factual allegations that such constitutional violation had no reasonable relationship to a legitimate governmental interest. *Duvall*, 631 F.3d at 206–07. Furthermore, as the Court has determined above that Hernandez has failed to meet his *Monell* burden in the context of an official policy, the Court must also determine—for the same reasons—that Hernandez has failed to allege a plausible conditions of confinement claim against Dallas. The Court GRANTS Dallas's motion to dismiss to the extent that it is based on condition(s) of confinement.

## V.   HERNANDEZ'S FOURTH AMENDMENT CLAIMS

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. A seizure of a person occurs when an officer "by means of physical force or show of authority, has in some way restrained the liberty of a citizen." *Terry v. Ohio*, 392 U.S. 1, 20 n.16, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

As discussed above, Hernandez's failure to train or failure to supervise claim(s) have been properly addressed under the Fourteenth Amendment—not the Fourth Amendment. Although the Second Amended Complaint makes passing reference to claim(s) under the Fourth Amendment, Hernandez offers no factual allegations that assert any claim under the Fourth Amendment. (ECF No. 13 at 4, *et seq.*). Thus, Hernandez does not appear to assert any claims under the Fourth Amendment. Furthermore, Dallas avers "Hernandez's Fourth Amendment claims fail as a matter of law." (ECF No. 16 at 31). Hernandez offers no response to this challenge. (ECF No. 20).

Northern District of Texas Local Rule 7.1(e) instructs that "[a] response and brief to an opposed motion must be filed within 21 days from the date the motion is filed." N.D. Tex. Loc. R. 7.1(e). A party who fails to pursue a claim beyond its initial pleading may waive or abandon the claim. *Black v. N. Panola School Dist.*, 461 F.3d 584, 588 n.1 (5th Cir. 2006) ("[Plaintiff] further failed to defend her retaliatory abandonment claim in both responses to the defendant's motion to dismiss."). Thus, a party's failure to defend a claim in his response to a motion to dismiss constitutes abandonment. *See Matter of Dallas Roadster, Ltd.*, 846 F.3d 112, 126 (5th Cir. 2017) (concluding plaintiff's failure to respond to defendant's argument in a motion to dismiss constituted abandonment) (citing *Black*, 461 F.3d at 588 n.1); *see, e.g.*, *Vela v. City of Houston*, 276 F.3d 659, 678-79 (5th Cir. 2001) (discussing abandonment of theories of recovery and defenses when such theories were not presented to the trial court).

Here, Hernandez failed to respond to Dallas's motion to dismiss as to claim(s) based on the Fourth Amendment. (*See* ECF No. 20). Consequently, Hernandez has abandoned those claim(s). *See Black*, 461 F.3d at 588 n.1; *Matter of Dallas Roadster, Ltd.*, 846 F.3d at 126; *Vela*, 276 F.3d at 678-79.[15] For those reasons, the Court GRANTS Dallas's motion to dismiss as to Hernandez's claim(s) based on the Fourth Amendment.

---

[15] *See also, e.g.*, *JMCB, LLC v. Bd. of Com. & Indus.*, 336 F. Supp. 3d 620, 634 (M.D. La. 2018) ("[F]ailure to brief an argument in the district court waives that argument in that court.") (quoting *Magee v. Life Ins. Co. of N. Am.*, 261 F. Supp. 2d 738, 748 n.10 (S.D. Tex. 2003)) (citations omitted); *Kellam v. Servs.*, No. 12-352, 2013 WL 12093753, at *3 (N.D. Tex. May 31, 2013), *aff'd sub nom. Kellam v. Metrocare Servs.*, 560 F. App'x 360 (5th Cir. 2014) ("Generally, the failure to respond to arguments constitutes abandonment or waiver of the issue.") (citations omitted); *Mayo v. Halliburton Co.*, No. 10-1951, 2010 WL 4366908, at *5 (S.D. Tex. Oct. 26, 2010) (granting motion to dismiss breach of contract claim because plaintiff failed to respond to defendants' motion to dismiss on this issue and thus waived the argument).

## VI.   LEAVE TO AMEND COMPLAINT

Hernandez requests, in the alternative, that the "Court grant him an opportunity to amend his Second Amended Complaint. (ECF No. 20 at 29-30). The Fifth Circuit has addressed leave to amend pleadings:

> Under Rule 15(a), "leave to amend shall be freely given when justice so requires," and should be granted absent some justification for refusal. *Foman v. Davis*, 371 U.S. 178, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962).The liberal amendment policy underlying Rule 15(a) affords the court broad discretion in granting leave to amend and, consequently, a motion for leave to amend should not be denied unless there is "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed [or] undue prejudice to the opposing party by virtue of allowance of the amendment[.]" *Foman*, 83 S.Ct. at 230.

*U.S. ex rel. Willard v. Humana Health Plan of Texas Inc.*, 336 F.3d 375, 386 (5th Cir. 2003). "[A] bare request in an opposition to a motion to dismiss—without any indication of the particular grounds on which the amendment is sought, *cf.* Fed. R. Civ. P. 7(b)—does not constitute a motion within the contemplation of Rule 15(a)." *Confederate Mem'l Ass'n, Inc. v. Hines*, 995 F.2d 295, 299 (D.C. Cir. 1993). "Granting leave to amend ... is not required if the plaintiff has already pleaded [his] 'best case.'" *Wiggins v. Louisiana State Univ.-Health Care Servs. Div.*, 710 F. App'x 625, 627 (5th Cir. 2017) (citing *Brewster v. Dretke*, 587 F.3d 764, 768 (5th Cir. 2009) (citing *Bazrowx v. Scott*, 136 F.3d 1053, 1054 (5th Cir. 1998) (per curiam))). "A plaintiff has pleaded [his] best case after [he] is apprised of the insufficiency of [his] complaint." *Wiggins*, 710 F. App'x at 627 (internal quotation and citation omitted). The Fifth Circuit further explained:

> **A plaintiff may indicate she has not pleaded her best case by stating material facts that she would include in an amended complaint to overcome the deficiencies identified by the court.** *See Brewster*, 587 F.3d at 767–68. **Similarly, a district court need not grant a futile motion to amend.** *Legate*, 822 F.3d at 211 (citing *Stripling v. Jordan Prod. Co.*, 234 F.3d 863, 872–73 (5th Cir. 2000)). "Futility is determined under Rule 12(b)(6) standards, meaning an amendment is considered futile if it would fail to state a claim upon which relief could be granted." *Id.*

*Wiggins*, 710 F. App'x at 627 (emphasis added in bold). The Fifth Circuit has affirmed denials of leave to amend where it determined that the proposed amendment would be futile after analyzing the claims. *See Edoinwe v. Bailey*, 860 F.3d 287, 295 (5th Cir. 2017) (where the proposed amended complaint failed to state a claim under 42 U.S.C. § 1983).

Here, Hernandez did not expressly request with particularity the opportunity to amend his complaint. *Willard*, 336 F.3d at 387. Hernandez's request for leave to further amend his complaint states:

> Although the allegations in Plaintiff's Second Amended Complaint are, at minimum, sufficient to meet the Ashcroft plausibility test and the Second Amended Complaint's factual content allows this Court to draw the reasonable inference that Defendant Dallas County is liable for the misconduct alleged, there is admittedly always room for improvement. [. . .] Should this honorable Court find that there is room for additional improvement in the Plaintiff's Second Amended Complaint, he respectfully prays that the Court grant leave to file a Third Amended Complaint to address the Court's concerns and the issues raised by Defendant Dallas County's Rule 12 Motion to Dismiss. [. . .] Permitting the Plaintiff to make amendments to his Second Amended Complaint would not be an act of futility. [. . .] Whatever the inartful imperfections of his Second Amended Complaint's allegations, the Plaintiff was indisputably harmed by the Defendant Dallas County's policies and/or customs that caused Plaintiff's Doe Defendant Lew Sterrett Jailers to act with deliberate indifference in violation of his constitutional and civil rights.

(ECF No. 20 at 19-20).[16] This "does not provide any indication of the grounds on which such an amendment should be permitted." *Willard*, 336 F.3d at 387. Northern District of Texas Local Civil Rule 15.1 requires a party seeking leave to file an amended pleading to "attach a copy of the proposed amended pleading as an exhibit to the motion[.]" N. D. Tex. Loc. Civ. R. 15.1(a). Hernandez attached no amended pleading to his request for leave. (*See* ECF No. 20). Hernandez further offers no discussion of factual allegation(s) that he intends to add or revise in any further amended pleading. (ECF No. 20 at 28-30). Notwithstanding, the Court's policies and procedures

---

[16] The Court has previously rejected a virtually identical request for leave to amend a complaint in a different case. *Harris v. UnitedHealth Group, Inc. of Tex.*, No. 3:23-CV-02486-E, 2024 WL 2734974, at *8-9 (N.D. Tex. May 28, 2024).

require defendants to apprise plaintiffs of insufficiencies in the complaint. *See Wiggins* 710 F. App'x at 627. Dallas avers it complied in apprising Hernandez, and the record reflects the same— which ultimately resulted in the Second Amended Complaint. (ECF Nos. 4; 12).

The Court determines Hernandez has pleaded his best case. (*See* ECF Nos. 1; 4; 5; 12; 13). The Court concludes permitting Hernandez "any [further] attempts at amendment would be futile." *See generally Wiggins*, 710 F. App'x at 627 (discussing the same). The Court thus DENIES Hernandez's embedded motion for leave to amend his Second Amended Complaint.

## VII.   CONCLUSION

For the reasons enumerated hereabove, the Court GRANTS Dallas's Motion to Dismiss, (ECF No. 16), and dismisses all of Hernandez's claims against Dallas with prejudice. Further, the Court DENIES Hernandez's request for leave to amend his complaint for a third time. Hernandez's claims against the Defendant Does 1 through 100 still remain. However, the Court is unsure of what claims remain against the John Does, as Hernandez refers to Defendants colloquially as "Dallas County Defendants" without clear definition of whether that reference includes the John Does. The Second Amended Complaint does not otherwise assert any express claims against the John Does. (ECF No. 13). Thus, Hernandez is ORDERED to show cause why its claims against the remaining John Doe Defendants should not be dismissed, and such filing shall be made on or before September 30, 2024. Failure to show cause by that date shall result in dismissal of all claims against the John Doe Defendants without prejudice. Final judgment shall then enter. *See* Fed. R. Civ. P. 54; Fed R. Civ. P. 58.

(*Signature page follows*).

**SO ORDERED.**

16th day of September, 2024.

ADA BROWN
UNITED STATES DISTRICT JUDGE